# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PAUL BONNER,

      Plaintiff,

v.

TONIA ROZMARYNOSKI,
MICHAEL SNODGRASS, ZACHARY
BERGER, and STEVE BOST,

      Defendants.

Case No. 17-CV-674-JPS

**ORDER**

**1. INTRODUCTION**

On June 14, 2017, the Court screened Plaintiff's Complaint. (Docket #9). The Complaint alleged that Defendants failed to appropriately treat Plaintiff's migraine headaches. *Id.* at 3-4. The Court allowed him to proceed on the theory that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. *Id.* at 4-6. The Court later screened and accepted an Amended Complaint which substituted various defendants, but did not change Plaintiff's substantive claim. (Docket #16). On January 12, 2018, Defendants moved for summary judgment. (Docket #22). Plaintiff responded to the motion on February 1, 2018, and Defendants replied on February 15, 2018. (Response, Docket #30; Reply, Docket #34). For the reasons explained below, Defendants' motion must be granted.

**2. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3. **BACKGROUND**

The following facts are material to the resolution of Defendants' motion. The Court notes the parties' disputes where appropriate.[1] During the events of this lawsuit, Plaintiff was first incarcerated at Green Bay Correctional Institution ("GBCI") and later the Wisconsin Secure Program Facility ("WSPF"). Defendant Steve Bost ("Bost") worked as a registered nurse at GBCI. Defendants Tonia Rozmarynoski ("Rozmarynoski"), Michael Snodgrass ("Snodgrass"), and Zachary Berger ("Berger") were correctional officers. Rozmarynoski was stationed at GBCI, while Snodgrass and Berger were employed at WSPF.

As noted above, Plaintiff proceeds on claims related to the treatment of his headaches. He identifies two dates of allegedly deficient care: November 20, 2016 and December 16, 2016. Generally speaking, inmates with medical concerns must fill out a request form (which Plaintiff calls a "blue slip") and submit it to the Health Services Unit ("HSU"). Nurses review the forms on a daily basis, and medical staff are available

---

[1]All facts are drawn from the parties' factual briefing, (Docket #35 and #36) unless otherwise noted.

throughout the week to provide immediate medical care. If an inmate has a medical emergency, they can report it to correctional staff, who will in turn contact HSU. HSU then determines whether the situation is indeed an emergency, and what should be done about it. Correctional officers defer to HSU's medical judgment; they do not provide medical care to inmates.

Prior to the dates in question, Plaintiff suffered a brain injury which caused migraine headaches. A doctor ordered that Plaintiff be given a Toradol injection at the outset of migraine symptoms, at a maximum of five injections per month. The doctor later clarified that Toradol was only to be used for severe pain. Otherwise, Plaintiff was to be provided Excedrin Migraine or Naproxen. Toradol is a controlled medication that must be administered by medical staff, while Excedrin Migraine and Naproxen are over-the-counter drugs which inmates can possess themselves. Toradol is kept in stock on a running basis; it is stored as a general supply, not to fulfill any particular inmate's prescription needs.

The Court begins with the November 21 incident, which occurred at GBCI. Rozmarynoski and Bost were on duty that day.[2] Bost received a call at approximately 6:00 p.m. from Rozmarynoski, stating that Plaintiff reported a headache. Bost asked Rozmarynoski about Plaintiff's symptoms to determine his level of pain. Rozmarynoski informed Bost that Plaintiff had recently been to the dining hall and back without complaints or signs

---

[2]Plaintiff's Amended Complaint states that the incident occurred on November 20. (Docket #19 at 1-2). Rozmarynoski states that it is her practice to note requests for medical care in the appropriate log book. There are no such notes from November 20, but there is one from November 21. Plaintiff does not dispute that he was given a Toradol injection on November 22, 2016, within twenty-four hours of his original complaint. (Docket #36 at 9). Thus, it appears that the Amended Complaint is simply mistaken, and that the interaction between Plaintiff, Rozmarynoski, and Bost occurred on November 21.

of pain. Further, Rozmarynoski said that Plaintiff had not reported dizziness, nausea, sensitivity to light, or vomiting, all of which might be signs of a migraine. Plaintiff claims that he reported a headache prior to going to the dining hall.[3]

Based on these facts, Bost determined that Plaintiff's headache was not severe and did not warrant emergency treatment. Bost told Rozmarynoski to tell Plaintiff that he should submit an HSU request form to be seen the next day. Rozmarynoski did so. Plaintiff filled out the form and, according to Rozmarynoski, did not report any further pain symptoms for the remainder of November 21. Plaintiff says he was in severe pain for the rest of the day and blacked out at one point. He also claims to have asked Rozmarynoski again for a Toradol injection, but was refused in light of the earlier call to Bost and the pending HSU request. Plaintiff does not dispute that he self-treated with Excedrin Migraine that night, and was given a Toradol injection the next day, within twenty-four hours of his original complaint.

Plaintiff was transferred to WSPF on November 29. His medical records were sent with him. Toradol was not sent, however. As noted above, it is a stock medication, and both GBCI and WSPF were expected to

---

[3]Plaintiff supports his assertion by citation to his "complaint." (Docket #36 at 7). The Court gathers that this is intended to cite his original complaint. That document is sworn and, generally speaking, sworn pleadings can supply testimonial evidence admissible at the summary judgment stage. (Docket #1 at 4); *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). The amended complaint is not sworn. (Docket #19 at 4). Of course, with his filing of an amended complaint, the original has become moot for pleading purposes. *Beal*, 847 F.3d at 901. However, *Beal* holds that old sworn complaints remain a viable source of admissible testimony. *Id.* Thus, to the extent Defendants object to Plaintiff's citation to the unsworn amended complaint, the original complaint contains the necessary testimony and affirmation of truth.

have their own supply. Plaintiff's prescriptions for Excedrin Migraine and Naproxen were filled upon his arrival.

Berger was working in Plaintiff's unit on December 16 (Snodgrass did not work that day). Like Rozmarynoski, Berger's practice is to log inmate medical complaints and contact HSU. The log book contains no such entries for December 16. Berger does not recall any specific interactions with Plaintiff that day. In his own statement of facts, Plaintiff claims that he told Berger multiple times that he was having a severe headache, and that Berger variously ignored him or said he would call HSU but never did. However, Plaintiff does not dispute Defendants' proposed fact that the correctional officer on duty did in fact call HSU.[4] The HSU staff apparently felt the situation was not serious and, like Bost, indicated that Plaintiff should file an HSU request form. Plaintiff would have had his over-the-counter medications available to him at that time, in any event.

Plaintiff cites to grievances he filed as support for his claims. For the November 21 incident, his grievance was accepted. The complaint examiner determined that while Bost exercised his medical judgment in declining a meeting with Plaintiff, he should have seen Plaintiff face-to-face that day. With respect to the December 16 incident, the complaint examiner noted that HSU was out of Toradol, and in light of Plaintiff's prescription, more should have been ordered. The examiner's comments were directed at HSU, though; they said nothing about Berger's conduct.

---

[4]Defendants are correct that Plaintiff did not dispute this fact. The Court has significant concerns about it, however, as discussed below. *See infra* note 7.

4.  **ANALYSIS**

Again, Plaintiff proceeds against all Defendants for violating his Eighth Amendment right to adequate medical care. Prisoners are entitled to a minimal level of healthcare while in custody. *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016). The Eighth Amendment is violated when the prisoner shows that they "suffered from an objectively serious medical condition," and that "the individual defendant was deliberately indifferent to that condition." *Id.* at 728. As the Court noted at screening, the *Gayton* case neatly summarizes the claim:

> [T]he plaintiff must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating h[im]; and (3) this indifference caused h[im] some injury. An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.
>
> With regard to the deliberate indifference prong, the plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, deliberate indifference is simply a synonym for intentional or reckless conduct, and that reckless describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from

liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citations and quotations omitted). In sum, "deliberate indifference means actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, No. 17-1561, 2018 WL 671152, at *2 (7th Cir. Feb. 2, 2018).[5]

With these general principles in mind, the Court addresses each of Defendants' potential liability in turn, beginning with Rozmarynoski. The Seventh Circuit applies the deliberate indifference standard differently depending on the job duties of the defendant in question. For non-medical correctional staff, like Rozmarynoski, who are "not responsible for administering medical care to [prisoners]," they are "entitled to defer to the judgment of [prison] health professionals so long as [they] d[o] not ignore [the prisoner]." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Rozmarynoski did not ignore Plaintiff, but rather called Bost upon Plaintiff's request. She is not a medical professional herself and was entitled to defer to Bost's medical judgment. Rozmarynoski did not display deliberate indifference to Plaintiff's headache.

Plaintiff's two arguments to the contrary lack merit. First, he asserts that his pain was so severe that Rozmarynoski should have known that simply checking with the nurse was not enough. This argument ignores the fact that the medical staff, and not the security staff, are in charge of inmate

---

[5]Defendants appear to concede that Plaintiff's headaches constitute a serious medical condition. (Docket #23 at 8) ("Bonner cannot demonstrate Defendants were deliberately indifferent to his serious medical condition."). The Court will assume the same for the purposes of this Order.

medical care. Rozmarynoski had no authority to make her own treatment decisions regarding Plaintiff's care. Second, Plaintiff relies on the favorable grievance outcome for this incident as evidence of deliberate indifference. The grievance reviewers did not question Rozmarynoski's behavior, however. More importantly, they did not utilize the deliberate indifference standard. Finally, even if they had, the Court alone is an expert on legal matters, namely application of that standard to the facts of this case. *Grussgott v. Milwaukee Jewish Day School, Inc.*, No. 17-2332, 2018 WL 832447, at *5 (7th Cir. Feb. 13, 2018).

The Court turns to Bost. As a medical professional, his conduct is deliberately indifferent only when it "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King*, 680 F.3d at 1018-19 (quotation omitted). The undisputed evidence confirms that Bost did indeed exercise his medical judgment. Based upon the symptoms reported to him, Bost concluded that Plaintiff was not experiencing emergent pain requiring an immediate Toradol injection. "Neither medical malpractice nor [Plaintiff's] mere disagreement with [Bost's] medical judgment is enough to prove deliberate indifference." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Plaintiff himself is no doctor, and has marshalled no competent evidence showing that Bost's decision was so below the range of acceptable care that it could be considered deliberately indifferent. *King*, 680 F.3d at 1019 ("In evaluating the evidence, we must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment.").

Plaintiff again points to the grievance, which found did find fault with Bost's conduct. For the same reasons stated above, the Court cannot treat grievance reviewers' opinions as authoritative on the issue of deliberate indifference. At best, their conclusion supports a finding of negligence or medical malpractice. That conduct, while certainly inappropriate, does not rise to the level of a constitutional violation. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts."). Plaintiff further claims that the decision to give him an injection the next day proves that Bost erred. This too is evidence of negligence, or unintentional harm. Finally, Plaintiff cites his symptoms that evening—severe pain and blacking out—as proof that Bost's response was inadequate. Those symptoms arose, however, after Bost had made his treatment decision. There is no evidence that additional calls were placed to Bost about Plaintiff's deteriorating condition. Bost made his decision based on what he knew at the time, and cannot be faulted for what he did not know.[6] *Ayoubi*, 2018 Wl 671152, at *2 ("[D]eliberate indifference means *actual*, *personal knowledge* of a serious risk[.]") (emphasis added).

Next up is Berger. No reasonable jury could find him deliberately indifferent to Plaintiff's headaches based on the third element of the claim: causation. It is undisputed that an unidentified third-shift officer called

---

[6]Plaintiff's Amended Complaint suggests that he believes a supply of Toradol should have been sent with him to WSPF. (Docket #19 at 3). Defendants argue against this assertion in their opening brief, (Docket #23 at 11), and Plaintiff makes no attempt to defend it in his response, *see generally* (Docket #30). In any event, it is undisputed that Toradol is a stock medication kept in a general supply at both GBCI and WSPF. There is no evidence that the lacking supply at WSPF was the fault of any of the named Defendants.

HSU, reported Plaintiff's symptoms, and that HSU declined to give Plaintiff an injection.[7] Thus, even if Plaintiff's assertions are true—that Berger either ignored him or negligently failed to call HSU—the result would not have changed. In other words, Plaintiff would have remained in pain for just as long with or without Berger's intervention. Because Plaintiff cannot show that Berger's inaction independently caused him harm, he presents no triable issues of fact.

The final defendant is Snodgrass. Though Plaintiff alleges that Snodgrass was involved in the December 16, 2016 incident, this is demonstrably impossible. Snodgrass was not working that day. Snodgrass

---

[7]As noted above, Defendants assert, and Plaintiff does not dispute, that "the correctional sergeant on duty" called HSU on December 16. (Docket #36 at 12). The only support for this fact comes from Plaintiff's Amended Complaint, not the testimony of that unidentified officer. *Id.* In his Amended Complaint, Plaintiff alleges that the third shift sergeant called HSU. (Docket #19 at 2). It is undisputed that Berger worked the first and second shifts on December 16. *Id.* at 10.

Plaintiff maintains that he contacted Berger during his shifts seeking medical care, but that none was forthcoming. (Docket #35 at 3-4). Defendants dispute these assertions of fact, claiming that "[Plaintiff] admits the correctional sergeant on duty contacted HSU and relayed to him that HSU felt that [Plaintiff's] condition was not sufficiently serious to warrant administration of the medication." *Id.* Defendants coyly avoid identifying the "correctional sergeant on duty." Plaintiff reiterates that it was the third shift sergeant who called, *id.* at 4, but this is met with the same dispute from Defendants, *id.* Berger himself says he does not remember interacting with Plaintiff that day. (Docket #26 at 2).

These facts indicate that Berger did not in fact call HSU. The Court was surprised, then, to see that Defendants claim that he did in their reply. (Docket #34 at 4-5) ("Berger was the sergeant on duty. Bonner himself acknowledges that the correctional sergeant on duty contacted HSU and relayed back that HSU felt that Bonner's condition was not sufficiently serious to warrant administration of the medication. . . . Bonner's admission that Berger called HSU is fatal to the claim against Berger."). The last sentence borders on a misrepresentation of the facts; Plaintiff made no such admission. Though this causes the Court some concern, it is of no moment to the disposition of the claim. Causation is clearly lacking.

thus had no way to know about Plaintiff's condition that day, much less deliberately disregard it. Plaintiff essentially concedes that Snodgrass has no liability. (Docket #30 at 1) (In the case at bar the defendant's [sic] except Snodgrass . . . are not entitled to summary judgment[.]"); *see id.* at 3-4 (discussing only Berger's conduct, with no reference made to Snodgrass).

5.  CONCLUSION

On the undisputed facts presented, Plaintiff fails to create triable issues of fact as to Defendants' liability under the Eighth Amendment. Summary judgment must, therefore, be granted in their favor. This action will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #22) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of February, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge